828 So.2d 520 (2002)
Joe A. SLOWINSKI, et ux.,
v.
ENGLAND ECONOMIC AND INDUSTRIAL DEVELOPMENT DISTRICT, et al.
No. 2002-C-0189.
Supreme Court of Louisiana.
October 15, 2002.
*522 Rebecca T. Boyett, John P. Doggett, Albin A. Provosty, Provosty, Sadler, Delaunay, Fiorenza & Sobel, for Applicant.
Charles D. Elliott, Jimmy R. Faircloth, Jr., Faircloth & Davidson, Christopher J. Roy, Jacques M. Roy, for Respondent.
KNOLL, Justice.
The sole issue before this Court is whether the England Economic and Industrial Development District is an "instrumentality of the state," as stated in the Article X, Section 1 of the Louisiana Constitution of 1974, thus subjecting it and its employees to the regulations and control of the State Civil Service Commission. For reasons that follow, we reverse the lower courts and hold the England Economic Industrial and Development District is not an instrumentality of the state, but rather an autonomous unit of local government, and therefore exempt from the state civil service laws.

FACTUAL AND PROCEDURAL BACKGROUND
Prior to its closure by the United States Department of Defense in 1992, England Air Force Base was a pivotal actor in the economy of Rapides Parish. The military installation poured approximately $100 million annually into the local economy, and employed close to 3,000 military and 600 civilian personnel. Reacting to the devastating financial consequences that might arise from the base's absence, the Louisiana Legislature established the England Economic and Industrial Developmental District ("EEIDD") to facilitate the transition of the closed air force base into a viable economic asset for the Rapides Parish community. With the leadership and guidance of the EEIDD, the former England Air Force Base has become the home of 63 businesses, employing over 1,700 residents; over 300 occupied housing units; and Alexandria International Airport, which handles 55,000 flights and transports roughly 250,000 passengers per year.
In August 1998, three former employees of EEIDD filed suit against EEIDD and its executive director for damages resulting from wrongful terminations. Plaintiffs alleged that EEIDD, as an instrumentality of the state, was mandated by Article X of the Louisiana Constitution to participate in the state civil service system, which in turn entitled plaintiffs to the benefits and protections afforded to classified employees. The most significant of these benefits and protections is the recognition that classified employees have a proprietary interest in continued employment and, therefore, cannot be disciplined or terminated except in accordance with the rules and regulations promulgated by the State Civil Service Commission.
At trial, plaintiffs filed a Motion for Partial Summary Judgment on the issue of the applicability of Article X, Section 1 to the EEIDD. Following a hearing, the trial court granted plaintiffs' motion and later issued a final judgment finding EEIDD to be an instrumentality of the state and subject to the state civil service laws. EEIDD and its executive director appealed. *523 During the pendency of the appeal, however, plaintiffs and defendants reached a settlement and compromise, whereby the plaintiffs, with one exception, released EEIDD and its chief executive from all claims related to the matter. Plaintiff, Wilson Ewing, Jr., alone, reserved his right to continue litigating the issue of whether he was entitled to due process protections afforded classified state civil service employees.
The Third Circuit, in an unpublished opinion, affirmed the judgment of the trial court, relying for the most part on this Court's decision in Polk v. Edwards, 626 So.2d 1128 (La.1993) and the language contained in EEIDD's enabling legislation, specifically LA.REV.STAT. ANN. § 33:130.351, which states the EEIDD was designed "for the benefit of the people of the state" and performs "essential governmental functions of the state."
We granted defendant's writ application to further study the correctness vel non of the lower courts' findings that the EEIDD is an instrumentality of the state. Slowinski et ux. v. England Economic and Industrial Development et al., 02-C-189 (La.3/28/02), 812 So.2d 638.

DISCUSSION
A. Whether the EEIDD is Constitutionally Mandated to Abide By the State Civil Service Regulations
Louisiana Constitution Article X, Section 1(A) provides that the "state civil service is established and includes all persons holding offices and positions of trust or employment in the employ of the state, or any instrumentality thereof ...." (emphasis added).[1] If a public entity is found to be an state instrumentality, it is constitutionally mandated that its employees be included within the state civil service system, since they are not otherwise excluded by its terms. Polk v. Edwards, 626 So.2d 1128 (La.1993). Classified civil service employees have a property interest in retaining their positions, and cannot be terminated without due process of law. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); AFSCME, Council # 17 v. State ex rel. Dep't of Health & Hospitals, 789 So.2d 1263, 1267 (La.6/29/01). However, Article X, Section 1(A) also states that the state civil service shall not include "persons holding offices and positions of any... local governmental subdivision," and "local governmental subdivision" is defined as "any parish or municipality." LA. CONST. art. VI, § 44(1).
Whether EEIDD is mandated by the Constitution to enroll in the state civil service system, this Court must determine (1) whether EEIDD is "an arm of the state" or state agency, or (2) whether EEIDD is sufficiently detached from the state that is more local and autonomous in nature, similar to a parish or municipal government. This determination requires a fact intensive inquiry, investigating the entity's powers and functions, as well as its interrelationship with the state. Polk, 626 So.2d 1128 (La.1993); State Licensing Board of Contractors v. State Civil Service Commission, 123 So.2d (La.1960). Additionally, we find factors such as the geographic scope and level of autonomy are helpful in investigating the "relationship" prong of the analysis. Anderson v. Red River Waterway Commission, 231 F.3d 211 (5th Cir.2000).[2]
*524 We find the facts discussed below clearly support that EEIDD is not an instrumentality of the state, but instead, more comparable to a parish or municipal government. By its own definition, EEIDD is a special district created by the legislature as a "unit of local government."[3] Significantly, EEIDD's enabling legislation, LA.REV.STAT. ANN. § 33:130.351-359, is contained in the Local Government section of the Louisiana Revised Statutes, Title 33, "Municipalities and Parishes," whereas state government is organized under Title 36, "Organization of Executive Branch of State Government." Moreover, EEIDD's jurisdiction and scope are limited to Rapides Parish. LA.REV.STAT. ANN. § 33:130.352 announces the district is created "to replace and enhance the economic benefits generated by the former air base" and LA.REV. STAT. ANN. § 33:130.351 states that the EEIDD is "composed of all of the territory located within Rapides Parish." EEIDD is also entirely governed from within Rapides Parish: members of the board of commissioners are required to be domiciliaries and registered votes of Rapides Parish, and membership is exclusively by appointment from local governing bodies within Rapides Parish.[4] LA.REV.STAT. ANN. §§ 33:130.353(A) & (B).
Significantly, in addition to being geographically limited to Rapides Parish, EEIDD is entirely emancipated from state control and oversight. Nowhere in EEIDD's enabling legislation is there mention that any of the express powers bestowed require approval from the state. Indeed, EEIDD is granted the authority to adopt its own bylaws and other rules and regulations; to enter into contracts; to incur debt and issue general obligation bonds in its own name and behalf; to acquire property by gift, grant, purchase, *525 lease, expropriation or otherwise; to sell, transfer, and convey any property acquired by it; and to levy and collect ad valorem, sales, and use taxes. LA.REV. STAT. ANN. §§ 33:130.353, 33:130.355. The board of commissioners fills its own vacancies and also "elect[s] yearly from its number, a chairman, vice-chairman, secretary, and treasurer and establish[es] their duties as may be regulated by laws adopted by the board." LA.REV.STAT. ANN. § 130.353(G). Lastly, and of importance, the board is expressly declared to be "the appropriate governing body for all purposes provided in the Louisiana Enterprise Zone Act, R.S. 51:1781, et. seq., within the area comprised of property owned and formerly owned by the district, and shall have the power to perform all acts specified by applicable laws and regulations to achieve such purpose." LA.REV. STAT. ANN. § 33:130.355(18).
The powers and functions entrusted to EEIDD, as well as its autonomous nature, are in stark contrast to those possessed by the entities that have been held by this Court to be instrumentalities of the state. For instance, in Polk v. Edwards, supra, this Court addressed the Casino Corporation, created by the legislature to adopt statewide rules for the conduct of specific games and gaming operations. The issue in Polk was the constitutionality of a provision in the Casino Act requiring employees of the corporation be exempt from the state civil service. This Court, however, recognized that the corporation is "accountable to the governor, the legislature, and the people of the state through a system of audits, reports, and legislative oversight, and through financial disclosure...." Id. at 1146 citing LA.REV. STAT. ANN. § 4:602(A). For instance, the board of directors are appointed by the governor and confirmed by the Senate. LA.REV.STAT. ANN. § 4:611(A)(1). For contracts to acquire an item, service, or product in the amount of $100,000.00 or more, the Casino Corporation is required to obtain authorization either pursuant to the Louisiana Procurement Code or special procedures adopted by the corporation. Id. at 1147 citing LA.REV.STAT. ANN. § 4:621(6)(a). Even further, any rule, regulation, or special procedure of the board requires legislative authority and publication of notice of intent in accordance with the Administrative Procedure Act. Id. citing LA.REV.STAT. ANN. § 49:953(A). Adding together these factors, we concluded:
After considering its powers and functions, as well as its interrelationship with the state in many areas, we find that the Casino Corporation is an instrumentality of the state and is subject to the provisions of the civil service system. The Casino Corporation does not enjoy an existence separate from the state. It does not independently transact its business and hire its personnel. Furthermore, its actions determine the progress of the gaming industry, which the legislature has designed to assist the growth of tourism and generate revenue as a benefit to the general welfare.

Id. at 1147.
This Court undertook the same type of analysis in State Licensing Board of Contractors v. State Civil Service Commission, 110 So.2d 847 (La.1959), holding the Contractors' Board to be a "state agency" under the Constitution of 1921[5] and thus *526 its employees were subject to the state civil service laws. In that case, the Board attempted to argue it was not a state agency because it is financed by contractors' license fees collected by itself rather than by state appropriations. We disagreed, noting the board's statewide regulatory powers and extensive entanglement with the state. For instance, the Board was created to "regulate the practice of contracting in Louisiana" and we pointed out that "[n]o person or firm can engage in contracting as defined by the statute unless licenced to do so by the Board ... nor may any awarding authority issue specifications or receive bids except by licenced contractors...." Id. at 849. Additionally, the Board operates almost entirely at the will of the Governor: it is statutorily required to obtain approval from the Governor for fees fixed pursuant to its authority; the board is mandated to file annual reports to the Governor; and membership to the Board is exclusively by appointment from the Governor. In the end, we concluded that the State Licensing Board of Contractor's "is clearly a state Board or agency; and, as such, it is subject under our State Constitution to regulation by civil service. There is not the slightest indication in the Act itself that the legislature intended otherwise." Id. at 849.
When EEIDD's powers, functions, and relationship with the state are compared to the Casino Corporation or the Contractors' Board, it is clearly evident that EEIDD is a local and self-governing entity. Both the Casino Corporation and the Contractors' Board were entrusted by the legislature to regulate entire industries statewide and both are subject to extensive oversight and control from the state government. EEIDD, in contrast, is (a) comprised of, and limited to, territory located exclusively within Rapides Parish, (b) governed solely by residents of Rapides Parish, and (c) entirely independent from state supervision.
Notwithstanding the overwhelming evidence which supports that EEIDD is a local and self-governing entity, plaintiff asserts, and the lower courts in part agreed, that because EEIDD is completely exempt from state taxation, and itself is entrusted with the power of taxation and expropriation, it must be an instrumentality of the state for purposes of the state civil service. We disagree. First, political subdivisions, which include municipal and parish governments, are entrusted with the power of taxation and expropriation, and as mentioned above, are not instrumentalities of the state. See LA. CONST. art. VI, § 30 ("A political subdivision may exercise the power of taxation...."); LA. CONST. art. VI, § 23 ("political subdivisions may acquire property for any public purpose by purchase, donation, expropriation, exchange, or otherwise.") (emphasis added). Secondly, we can find nothing in the Louisiana Revised Statutes, Civil Code, or even the jurisprudence that states that tax exempt status equates to being a state instrumentality. We are unwilling to find that because EEIDD, an autonomous unit of local government for all intents and purposes, has been exempted by the legislature from paying taxes, it should somehow be forced to abide by the regulations promulgated by the State Civil Service Commission.
As such, we disagree with the lower courts that the EEIDD is a state instrumentality. We find it is clear that EEIDD *527 is an autonomous unit of local government, thus, it is not constitutionally mandated to follow the laws and regulations of the State Civil Service Commission. Although we find EEIDD is not constitutionally mandated to participate in the state civil service, our inquiry does not end here. We will next determine if the legislature intended EEIDD to participate in the State Civil Service Commission.
B. Whether the Legislature Intended the EEIDD to Participate in the State Civil Service System
We acknowledge the legislature possesses the power to designate a political subdivision to be an instrumentality of the state, and thus subject to civil service regulation, no matter how local or autonomous the entity might be. LA. CONST. art. X, § 15.[6] In finding EEIDD to be an instrumentality of state, both lower courts relied primarily on the language contained in LA.REV.STAT. ANN. § 33:130.354. Entitled "Governmental Functions," EEIDD's enabling legislation reads, in part:
The exercise by the board of the powers conferred by this Subpart shall be deemed and held to be essential governmental functions of the state. As the exercise of the powers granted hereby will be in all respects for the benefit of the people of the state, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, the district shall not be required to pay any taxes, including, but not limited to, sales and use taxes, ad valorem, occupational licencing, income, or any other taxes of any kind or nature....
(emphasis added). Admittedly, phrases such as "essential governmental functions of the state" and "for the benefit of the people of the state" could be construed to imply a legislative intent for EEIDD to be considered a state instrumentality. However, we are more persuaded by the legislature's omission of an express declaration that EEIDD shall be considered an instrumentality of the state. Indeed, we have found numerous instances where the legislature has explicitly declared an entity to an instrumentality of the state, often using identical language. Consider for example:
(1) Louisiana Stadium and Exposition District (LA. CONST.1921, art. XIV, § 47, continued as a statute by LA. CONST. Art. XIV, § 16(A)(10)) (emphasis added)
"The District shall constitute an instrumentality of the state of Louisiana exercising public and essential governmental functions, and the exercise by the District of the powers conferred herein shall be deemed and held to be essential governmental functions of the state of Louisiana. As the exercise of the powers granted hereby will be in all respects for the benefit of the people of the State... the District shall not be required to any taxes or assessments ..."
(2) Red River Waterway District (LA. REV.STAT.ANN. § 34:2308) (emphasis added)
"The commission shall constitute an instrumentality of the State of Louisiana exercising public and essential *528 governmental functions; and the exercise by the commission of the powers conferred by this Chapter in the establishment, operation and maintenance of the waterway and the acquisition, construction, operation and maintenance of the various port and related facilities hereinafter authorized shall be deemed and held to be essential governmental functions of the state of Louisiana. As the exercise of the powers granted hereby will be in all respects for the benefit of the people of the state, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, the commission shall not be required to pay any taxes or assessments...."
(3) Iatt Lake Water Conservation District (LA.REV.STAT.ANN. § 38:3085.4) (emphasis added)
"The board shall constitute an instrumentality of the state of Louisiana, exercising public and essential governmental functions. The exercise by the board of the powers conferred by the Part shall be deemed to be essential governmental functions of the state. Because the exercise of the powers granted hereby will be in all respects for the benefit of the people of the state... the board shall not be required to pay any taxes or assessments..."[7]
Because of the weighty consequences that arise when the legislature includes the term of art, "instrumentality of the state," i.e., an entity is required to participate in the state personnel management bureaucracy, it is unreasonable to assume our legislature overlooked it, when they made their intent proof positive in the statutes outlined above. See, e.g., Aultman v. Entergy Corp., 98-2244 (La.App. 1 Cir. 11/5/99), 747 So.2d 1151, 1155 ("Had the legislature intended to adopt the requirements of the OWBPA, it would have unequivocally set forth those requirements as part of the state statute.").
Accordingly, we find the terms "essential governmental functions of the state" and "for the benefit of the people of the state" do not necessarily reflect the legislature's intent to subject EEIDD to the State Civil Service Commission. As further convincing support for this finding, we note with significance that the legislature expressly declared the EEIDD, through its board of commissioners, shall "have the power to organize and reorganize the executive, administrative, clerical and other departments and forces of the district, and to fix the duties, powers, and compensation of all employees, agents, and consultants of the district." LA.REV.STAT. ANN. § 33:130.353(F) (emphasis added). Had the legislature intended EEIDD to be a state instrumentality, or more specifically, subject to the state civil service regulations, they would have created an impossibility as employee compensation and job classification are governed exclusively by the Civil Service Commission.[8] LA. *529 CONST. art. X(A)(1) ("[the state civil service commission] is vested with the broad and general rulemaking and subpoena powers of the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal ... employment conditions, compensation and disbursements to employees...."). See also Louisiana Dep't. of Agriculture and Forestry v. Sumrall, 98-C-1587 (La.1999), 728 So.2d 1254,1261.

CONCLUSION
In sum, first we find that EEIDD is not constitutionally mandated to have its employees included in the State Civil Service Commission, because it is not an instrumentality of the state as stated in Article X, Section 1 of the Louisiana Constitution of 1974. EEIDD's powers, functions, and interrelationship with the state clearly demonstrate that it is an autonomous unit of local government. Secondly, we find the legislature did not intend for EEIDD to participate in the State Civil Service Commission, because the legislature did not declare that EEIDD was an instrumentality of the state, but instead expressly declared that EEIDD's employees fell under the control of the EEIDD, through its board of commissioners. LA.REV. STAT. ANN. § 33:130.353(F). Accordingly, we find the lower courts erred in finding otherwise and we must reverse.

DECREE
For the foregoing reasons, the judgments of the lower courts are reversed and set aside. Judgment is hereby granted in favor of the England Economic and Industrial Development District and Jon. W. Grafton, denying the motion for partial summary judgment filed by plaintiff, Wilson Ewing, Jr. This case is remanded to the district court for further proceedings, consistent with the views expressed herein.
REVERSED AND REMANDED.
JOHNSON, J., concurs.
NOTES
[1] Our Constitution also requires civil service compliance from cities having populations in excess of 400,000. LA. CONST. art. X, § 1(B).
[2] In Anderson, the court addressed the issue of whether the Red River Waterway Commission was an "arm of the state" entitled to Eleventh Amendment immunity. Although Anderson did not directly address whether a public entity was an instrumentality of the state for purposes of state civil service, we find its analysis useful in examining a political subdivision's connection to the state. The Court of Appeals in Anderson used six factors as a guide in the determination of whether an entity is an arm of the state: (1) whether the state statutes and case law characterize the agency as an arm of the state, (2) the source of funds for the entity, (3) the degree of local autonomy the entity enjoys, (4) whether the entity is concerned primarily with local, as opposes to statewide, problems, (5) whether the entity has authority to sue and be sued in its own name, and (6) whether the entity has the right to hold and use property. Id. at 214.
[3] EEIDD was also designated by the legislature, in LA.REV.STAT. ANN. § 33:130.351, to be a "political subdivision of the state as defined in Article VI, § 44(2) of the Constitution of Louisiana." Nonetheless, we recognize at the outset that the characterization of the EEIDD as a "political subdivision of the state" is not determinative of whether it is an "instrumentality of the state." Parish and municipal governments, which are expressly included in the definition of "political subdivision of the state," are expressly excluded from the state civil service. LA. CONST. art. X, § 1. See also Lee Hargrave, Limits on Borrowing and Donations in the Louisiana Constitution of 1975, 62 La. L.Rev. 137, 177 (2001) ("The reference to a political subdivision of the state is essentially a straightforward reference to local governments.") (emphasis omitted).
[4] The members of the board of commissioners are appointed as follows: (a) three members appointed by the Rapides Parish Police Jury; (b) three members appointed by the mayor of the city of Alexandria, and confirmed by the city council; (c) one member appointed by the mayor of the city of Pineville, and confirmed by the board of aldermen; (d) one member appointed by a majority of the remaining incorporated municipalities in Rapides Parish, based upon resolutions approved by the respective boards of aldermen; and (e) two members nominated by the Chamber of Commerce of Central Louisiana, and appointed by resolutions duly adopted by majority votes of the Rapides Parish Police Jury and Alexandria City Council. LA.REV.STAT. ANN. § 33:130.353(A).
[5] Under LA. CONST. of 1921, art. XIV, § 15, the classified Civil Service of the state included "all offices and positions of trust or employment in the employ of the State, or any department, independent agency or other agency, board or commission thereof ...." (emphasis added). Thus, we believe cases adjudicated before the enactment of our current Constitution are not controlling due to the obvious differences in language between the two constitutional provisions. See, e.g., State Civil Service Commission v. Audubon Park Commission, 99 So.2d 920 (La.App.Orleans 1958). Nevertheless, we find that State Licensing Board of Contractors, the seminal case on this issue under the old Constitution, is helpful in further analyzing various governmental entities' relationships with the state.
[6] LA. CONST. art. X, Section 15 reads in part: "Nothing in this Part shall prevent the establishment by the legislature of a parish civil service system in one or more parishes, applicable to any or all parish employees ... or the establishment by the legislature ... of a municipal civil service system in one or more municipalities having a population of less than four hundred thousand, in any manner now or hereafter provided by law." See also Civil Service Commission of the City of New Orleans v. Foti, 349 So.2d 305 (La. 1977).
[7] See also LA.REV.STAT. § 34:3268 (Cane River Waterway District); LA.REV.STAT. ANN. § 38:2324(A) (Sabine River Authority); LA.REV.STAT. ANN. § 2:341(A) (Ascension St. James Airport and Transportation Authority); LA.REV.STAT. ANN. § 33:7807 (St. Bernard Parish Water and Sewer Commission); and LA.REV.STAT. ANN. § 34:2308 (Louisiana Crawfish Market Development Authority).
[8] Although the determination is not relevant to our holding, this Court questions whether plaintiff even has standing to challenge EEIDD's failure to participate in the state civil service system. Defendants did not raise this issue, however, we can recognize the peremptory exception of no right of action sua sponte. Plaintiff's argument essentially is that because the EEIDD is an instrumentality of the state, he is a classified employee entitled to due process protections before termination of employment. However, without filling out a pre-employment application or taking the civil service exam, there is no way to determine whether plaintiff would even qualify in his own right to become a classified employee. See State ex rel. Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65 (La.1949) (the fundamental purpose running through civil service laws is that positions shall be filed by competitive examinations). This question was directly answered by the Louisiana Fourth Circuit Court of Appeal in Digerolomo v. French Market Corp., 272 So.2d 385 (La.App. 4 Cir.), writ refused, 275 So.2d 784 (1973). In Digerolomo, the court maintained defendant's exception of no right of action, holding that the general manager of city owned corporation who did not legally comply with requirements which would bring him under classified service could not urge that he was entitled to benefit of classified service. Nonetheless, this court is cognizant of the United States Fifth Circuit Court of Appeals decision in Wallace v. Shreve Memorial Library, 97 F.3d 746 (5th Cir.1996), in which the court ruled that the fact that the appellant did not obtain her position through competitive exam or otherwise comply with the civil service requirements did not remove her from the civil service system. In that case, this Court had earlier declined to accept the Fifth Circuit's certified question on the subject. Because we are disposing of the present case on other grounds, we pretermit this issue for another day.