**Bruce A. CASEY, et al.**

v.

**LIVINGSTON PARISH COMMUNICATIONS DISTRICT, et al.**

Civil Action No. 06–341–FJP–DLD.

United States District Court, M.D. Louisiana.

Feb. 23, 2007.

Roy H. Maughan, Sr., James L. Maughan, Maughan, Maughan & Lormand, LLC, Baton Rouge, LA, for Bruce A. Casey, Brenda Vulgamore.

Henry D.H. Olinde, Jr., Couhig Partners, LLC, Baton Rouge, LA, for Livingston Parish Communications District, Ronald W. Cotton, Fred Banks.

## RULING

POLOZOLA, District Judge.

Plaintiffs filed suit against the defendants, Livingston Parish Communications District ("LPCD"), Ronald W. Cotton and Fred Banks,[1] alleging claims under the Fair Labor Standards Act ("FLSA"), for violations of their constitutional rights under 42 U.S.C. § 1983, for age discrimination,[2] and for violations of Louisiana state law. Defendants filed a motion to dismiss[3] seeking dismissal of most of the plaintiffs' claims.

For the reasons which follow, the Court dismisses the plaintiffs' Section 1983 claims[4] and plaintiffs' claims for age discrimination filed under both federal and state law.[5] The Court also dismisses plaintiffs' claims for recovery under Louisiana's Wage Payment statute against the individual defendants.[6]

## I. Procedural Background

Plaintiffs, former employees of the LPCD, filed this suit asserting various claims. Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6)[7] of the Federal Rules of Civil Procedure seeking dismissal of all plaintiffs' claims except the FLSA claim filed against all defendants and the Louisiana Wage Payment filed against the LPCD. Plaintiffs subsequently amended their complaint and filed a response to the defendants' motion.[8] The Court granted both parties leave to file additional memoranda supporting their positions.[9]

## II. Law and Analysis

### A. Motions to Dismiss under Rule 12

■ Defendants move to dismiss the plaintiffs' claims under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.[10] Under Rule 12(b)(1), an action may be dismissed "when the plaintiff has failed to exhaust his administrative remedies that are a prerequisite to his suit."[11]

■ Under Rule 12(b)(6), motions to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief.[12] A motion to

---

1. Cotton and Banks are referred to as "individual defendants" throughout this Ruling.

2. Plaintiffs originally filed suit under the Age Discrimination in Employment Act (42 U.S.C. § 1981) but amended their complaint and now claim to sue under Louisiana State Law. However, plaintiffs only amended paragraph 1 of the complaint and failed to amend any subsequent paragraphs. Therefore, it is unclear under the amended complaint whether the plaintiffs are asserting claims under state law or both state and federal law for age discrimination. Based upon the complaint as amended, this Court addresses plaintiffs' age discrimination claim under both state and federal law.

3. Rec. Doc. No. 8.

4. Count III of the Amended Petition, Rec. Doc. No. 14.

5. Count III of the Amended Petition, Rec. Doc. No. 14.

6. Count IV of the Amended Petition, Rec. Doc. No. 14.

7. See infra n. 10.

8. Rec. Doc. Nos. 14 & 15.

9. Rec. Doc. Nos. 21 & 26.

10. Defendants move to dismiss the age discrimination claims under Rule 12(b)(1) and the remainder of the claims under Rule 12(b)(6). See Memorandum in Support of Motion to Dismiss, Rec. Doc. No. 9.

11. 5B Wright and Miller, Federal Practice and Procedure: Civil 3d § 1350 (2004). See also Edwards v. Johnson, 209 F.3d 772, 776–777 (5th Cir.2000).

12. Id.

dismiss for failure to state a claim is viewed with disfavor and the factual allegations of the complaint must be accepted as true.[13] To avoid dismissal under Rule 12(b)(6), plaintiffs must plead specific facts, not mere conclusory allegations; "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[14]

### B. Plaintiffs' Claims under 42 U.S.C. § 1983

Plaintiffs seek to recover under 42 U.S.C. § 1983 because they were terminated without notice and a hearing.[15] Plaintiffs contend the individual defendants acted under color of state law when they terminated plaintiffs. Plaintiffs argue they were "deprived of rights and privileges secured by the constitution and law...."[16] Plaintiffs further claim that the individual defendants conspired to deprive them of the privileges and rights secured by the Constitution and other laws.

The nature of these claims did not become clear until presented in the plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss.[17] Plaintiffs claim their employment with the LPCD is protected by the due process clause because they are members of the Louisiana State Civil Service System. Therefore, plaintiffs argue they have a property interest in their jobs and the LPCD must follow the requirements of the State Civil Service Commission before the LPCD can discharge the plaintiffs. Otherwise, defendants have deprived plaintiffs of rights and privileges secured by the Constitution.

Defendants contend plaintiffs' claims under 42 U.S.C. § 1983 can only survive if the Court finds the LPCD is a part of the State Civil Service System.[18] The defendants contend the LPCD is not a part of the State Civil Service System because it is not an instrumentality of the state and the Louisiana Legislature has not included the LPCD in the State Civil Service System. Therefore, defendants argue, the plaintiffs have no property interest in their jobs and their claims under Section 1983 are improper.

This Court agrees with the defendants. After a careful review of the jurisprudence[19] and considering the Louisiana Supreme Court's decision in *Slowinski v. England Economic and Industrial Development District*,[20] this Court determines LPCD is not part of the State Civil Service System and plaintiffs' claims under 42 U.S.C. § 1983 must be dismissed.

---

**13.** See *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 388 (5th Cir.2002).

**14.** *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993).

**15.** Plaintiffs attempt to "recover all deprivation of constitutional rights damages awardable to classified employees under 42 U.S.C. § 1983 because they were terminated by defendants acting with malice, without a hearing." Rec. Doc. No. 14.

**16.** Rec. Doc. No. 1.

**17.** Rec. Doc. No. 15.

**18.** As the Fifth Circuit noted in *Wallace v. Shreve Memorial Library*, in Louisiana a person can have a property interest in their job only if they contracted to be fired only for cause or if they are under the Louisiana Civil Service System. 79 F.3d 427, 429 (5th Cir. 1996).

**19.** As will be discussed later, the Fifth Circuit Court of Appeals and the Louisiana Supreme Court have issued opposite opinions on this issue. The Supreme Court has written the latest opinion on this issue after it initially refused to accept the Fifth Circuit's request to certify the issue to the Supreme Court. See *infra* n. 24.

**20.** 02–0189 (La.10/15/2002), 828 So.2d 520.

As noted earlier in this opinion, to have a claim under Section 1983, plaintiffs must prove that the employees of the LPCD fall within the State Civil Service System. Plaintiffs argue they are civil service employees because Louisiana Constitution Article 10, Section 1 ("Section 1") makes all employees of instrumentalities of the state, including employees of "joint state and parochial agencies, or joint state and municipal agencies," within the Civil Service System.[21] Therefore, plaintiffs contend that since the LPCD is a joint agency, its employees are subject to the Civil Service System.

Despite the broad grant of rights to employees under Section 1, Louisiana Constitution Article 10, Section 7 ("Section 7") provides that an employee must meet certain requirements to be considered a civil service employee. These two provisions appear to conflict with one another. However, in *Wallace v. Shreve Memorial Library*,[22] the Fifth Circuit held that Section 7 did not limit the rights of government employees. In *Wallace*, the Fifth Circuit held a library technician employed by a local library should be considered a civil service employee even though he had never met the requirements of a civil service employee under Section 7.[23] Based on the *Wallace* ruling and the language in Section 1, plaintiffs argue they are entitled to protection as civil service employees.

Despite the holding of *Wallace*, a subsequent decision from the Louisiana Supreme Court has clarified and more narrowly defined when an employee is considered a civil service employee. The Court recognizes that absent such subsequent jurisprudence from the Louisiana Supreme Court, this Court would be bound by the Fifth Circuit's opinion in *Wallace*. However, as noted by the Fifth Circuit in *Hughes v. Tobacco Institute, Inc.*,[24] this Court is not bound by Fifth Circuit jurisprudence when a subsequent state court decision is contrary to the Fifth Circuit's jurisprudence.

■ Under the broad standard outlined in *Wallace*, plaintiffs could be considered within the State Civil Service System. However, the Louisiana Supreme Court altered the standard for determining whether entities are within the Civil Service System in *Slowinski*, decided six years after the *Wallace* decision. *Slowinski*, therefore, is clearly applicable and binding on this Court. To fall within the State Civil Service System under *Slowinski*,[25] the political subdivision must be an "instrumentality of the state" or the legislature must intend for the political subdivision to be included in the Civil Service System.[26] The Louisiana Supreme Court held the England Economic and Industrial Development District (EEIDD) was not part of the Civil Service System and employees of the EEIDD had no property interest in their employment.[27]

---

21. La. Const. Art. 10, § 1 (1996)

22. 97 F.3d 746. *Wallace* was decided after the Louisiana Supreme Court refused to answer a certified question from the Fifth Circuit asking whether a library technician was a civil service employee.

23. *Id.* at 747. The holding in *Wallace* was criticized by the Louisiana Supreme Court in *Slowinski*. 828 So.2d 520. There, the Louisiana Supreme Court noted that when an employee fails to complete the pre-employment application or fails to take the civil service

exam, there is no way to determine if the plaintiff would even qualify to be a part of the Civil Service System and therefore whether such a plaintiff has standing is questionable at best. *Id.* at 529, n. 8.

24. 278 F.3d 417, 425 (5th Cir.2001).

25. 828 So.2d 520.

26. *Id.* at 526.

27. *Id.*

■ The *Slowinski* court outlined several factors to consider when determining whether a political subdivision is to be considered an instrumentality of the state.[28] The court noted the characterization of an entity as a "political subdivision of the state" is not the determinative factor in deciding whether the entity is an instrumentality of the state.[29] Instead, the court considered numerous factors to be considered by the Court in making the determination, including considerations of the autonomy and geographic limitations of the political subdivision.[30]

An important matter considered by the *Slowinski* court was the fact that the EEIDD was "entirely emancipated from state control and oversight."[31] By contrast, some entities which are considered to be within the Civil Service System operate at the "will of the governor" and have an "extensive entanglement" with the state.[32] The Supreme Court found there was no such entanglement for the EEIDD.

■ After determining the EEIDD was not an instrumentality of the state, the court had to determine whether the legislature intended the EEIDD to be within the Civil Service System. According to the *Slowinski* court, for a court to find that the legislature intended for an entity to be considered a part of the State Civil Service System, there must be an "express declaration" from the legislature including the entity in the Civil Service System.[33] Absent such a declaration, the court should find that the entity is not subject to State

Civil Service System. Finding no such declaration in the statutes which enabled the creation of the EEIDD, the court found the EEIDD outside the Civil Service System.[34]

■ Applying the *Slowinski* analysis to the facts of this case, the Court finds that the LPCD cannot be considered to fall within the State Civil Service System. As outlined below, the LPCD does not meet the standards set forth in *Slowinski* to be considered an instrumentality of the state. Furthermore, there is no language in the statutory authority creating communications districts that remotely suggests communications districts should be subject to the Civil Service System.[35]

Plaintiffs argue that *Slowinski* is inapplicable under the facts of this case.[36] Instead, plaintiffs seek to have the Court adopt the Fifth Circuit's decision in *Wallace* and to rely heavily on La. Const. Art. 10, Section 1. Plaintiffs contend *Slowinski* is inapplicable, even though it was decided six years after *Wallace*. Plaintiffs based this argument on the fact that the Louisiana Supreme Court noted that ultimately the legislature can designate a political subdivision subject to the Civil Service System regardless of how autonomous the entity may be.

Plaintiffs' argument is totally frivolous[37] and misconstrues the meaning of *Slowinski*. While the Court respects its obligation to follow Fifth Circuit precedent, it must also follow the decision of the Louisi-

---

28. *Id.* at 524–527.

29. *Id.* at 524, n. 3.

30. *Id.* at 524–527. The relevant factors in *Slowinski* are considered more closely with the facts of the current matter below.

31. *Id.* at 526.

32. *Id.*

33. *Id.* at 527.

34. *Id.*

35. La. R.S. 33:9101–9110.

36. Plaintiffs' Reply to Defendants' Reply Memorandum, Rec. Doc. No. 26, p. 2.

37. See *supra* n. 24.

ana Supreme Court interpreting the same statute and issues particularly when the Louisiana Supreme Court discussed and criticized the ruling. In *Slowinski*, the Louisiana Supreme Court recognized the ability of the legislature, via an "express declaration," to include a political subdivision in the Civil Service System.[38] The Louisiana Legislature failed to utilize the authority recognized by the Louisiana Supreme Court when it enabled the creation of communication districts. There is no declaration set forth in the legislation which enables the creation of communications districts.[39]

It is clear the language which enables the creation of communications districts does not expressly declare the districts within the Civil Service System. However, whether the LPCD is an instrumentality of the state requires additional analysis by the Court. Plaintiffs argue that because communications districts are "political and legal subdivisions of the state," they should fall within the Civil Service System. Plaintiffs contend communications districts should be considered a "joint state and parochial agency, or, a joint state and municipal agency"[40] since they are legal subdivisions of the state. These facts make the LPCD an instrumentality of the state and subject to the State Civil Service System[41] according to the plaintiffs.

While the plaintiffs deny the applicability of the holding of *Slowinski* to the facts of this case, they fail to provide the Court with an adequate definition or test to determine whether an entity is an instrumentality of the state. Rather, plaintiffs contend the Court should adopt the definition of "instrumentality" found in Black's Law Dictionary.[42] The Court believes it should and indeed is required to follow the applicable jurisprudence rather than a definition from a dictionary.

The Court does not understand why the plaintiffs fail to embrace the definition of instrumentality in *Slowinski*. While the Court does finds that the LPCD should not be considered an instrumentality of the state under *Slowinski*, the plaintiffs do have several factors which work in their favor. Considering the nature of the operations of communications districts, there is a certain level of interrelationship between the state and federal governments and the LPCD. As the plaintiffs note, communications districts have ties to federal and state regulation and regulatory bodies. The power bestowed to the LPCD requires both state and federal approval.[43] The Public Service Commission also has oversight over the ability of the LPCD to raise funds via taxes on telephone service.[44] The LPCD may get additional funds from federal, state or local sources.[45]

---

**38.** 828 So.2d at 526.

**39.** *See* La. R.S. 33:9101–9110.

**40.** Plaintiffs' Reply to Defendants' Reply Memorandum, Rec. Doc. No. 26, p. 3, *citing* La. Const. Art. 10, § 1.

**41.** There are only four other instances in which the legislature has used the term "political and legal subdivision of the state." The term has been used to enable the creation of:
  1. Mosquito Abatement Districts, *see* La. R.S. 33:7721;
  2. Fire Ant Abatement Districts, *see* La. R.S. 33:7751;

  3. Garbage Districts, *see* La. R.S. 33:8001; and
  4. Road Lighting Districts, *see* La. R.S. 48:1306.

**42.** Plaintiffs' Reply to Defendants' Reply Memorandum, Rec. Doc. No. 26, p. 3, *citing* La. Const. Art. 10, § 1.

**43.** *Id. at* 4, *citing* La. R.S. 33:9109 & 9106.

**44.** *See* La. R.S. 33:9106.

**45.** *Id.*

Unlike the EEIDD in *Slowinski*, the LPCD cannot be considered "entirely emancipated from state control and oversight." [46]

Despite the above factors which have been considered by the Court, the Court finds the LPCD still lacks the "extensive entanglement" required by *Slowinski* to be considered an instrumentality of the state under the law and facts of this case. Instead, the LPCD must be considered, like the EEIDD in *Slowinski*, "an autonomous unit of local government ... not constitutionally mandated to follow the laws and regulations of the State Civil Service Commission." [47] Like the EEIDD, the LPCD is geographically limited to operate in one parish. It operates as a largely autonomous entity where the membership of the governing authority of the LPCD is made up exclusively of appointments made by a local governing body. [48] It is clear that the directing board is staffed by qualified electors of the district. [49] The commission has the authority to employ employees. [50] The LPCD, despite the fact it has some relationship with federal and state agencies, is not accountable to the governor, the legislature or the state in any manner. It is an autonomous entity that is a unit of local government which does not operate at the "will of the governor" and has no statewide regulatory powers. [51]

■ Simply put, the LPCD is not an instrumentality of the state and therefore, its employees should not be considered to have the protections of the Civil Service System. For reasons set forth above, plaintiffs' claims under Section 1983 must be dismissed. Plaintiffs have no property interest in their jobs, were not entitled to any due process before being discharged, and fail to satisfy the requirements of bringing a Section 1983 claim under the law and facts of this case. [52]

## C. Plaintiffs' Age Discrimination Claims

In addition to seeking dismissal of the Section 1983 claims, defendants move to dismiss plaintiffs' age discrimination claims. [53] Plaintiffs initially brought claims under the Age Discrimination in Employment Act ("ADEA"). [54] After the defendants filed the pending motion to dismiss, plaintiffs amended their complaint and asserted claims under the Louisiana Employment Discrimination Law ("LEDL"). [55] Even after carefully reviewing the amended complaint, it is unclear whether plaintiffs are asserting claims only under the LEDL, or both the LEDL and the ADEA. Although plaintiffs' pleading is inadequate and fails to comply with the Federal Rules of Civil Procedure, plaintiffs are not prejudiced since neither claim is procedurally proper and must be dismissed.

**46.** 828 So.2d at 524.

**47.** *Id.* at 527.

**48.** *See* La. R.S. 33:910.

**49.** *Id.*

**50.** *See* La. R.S. 33:9103.

**51.** 828 So.2d at 526. As the court noted in *Slowinski*, these factor were incredibly important in its decision in *Polk v. Edwards*. 626 So.2d 1128 (La.1993).

**52.** It is clear that a violation of state law does not support a Section 1983 claim. *Parker v. McKeithen*, 488 F.2d 553 (5th Cir.1974).

**53.** As noted earlier, defendants move to dismiss these claims under Fed.R.Civ.P. 12(b)(1). See *supra*, n. 9.

**54.** Rec. Doc. No. 1.

**55.** Rec. Doc. No. 14.

■ As a condition precedent to filing suit on an ADEA claim in federal court, a plaintiff must first timely file a complaint with the Equal Employment Opportunity Commission ("EEOC").[56] In this case, plaintiffs have failed to show that they filed a complaint with the EEOC or otherwise exhausted their administrative remedies and received a right to sue letter from the EEOC. Therefore, plaintiffs' claims under the ADEA must be dismissed as they have failed to exhaust administrative remedies as required by law.

■ Plaintiffs also allege age discrimination under Louisiana's Employment Discrimination Law.[57] To assert a claim under Louisiana's Employment Discrimination Law, written notice must first be given.[58] In this case, there is no evidence that plaintiffs followed this procedure. Therefore, plaintiffs' state age discrimination suit is premature and must be dismissed.

### D. Plaintiffs' State Wage Law Claims

Finally, in their amended complaint, plaintiffs assert claims under Louisiana's Wage Payment Law.[59] Louisiana's Wage Payment Law allows recovery for payment of wages due upon termination of employment. Failure to timely pay wages which are due subjects employers to liability.[60] In this case, plaintiffs may only seek recovery against their employer, the LPCD, and not against the individual defendants. Therefore, plaintiffs' claims against the individual defendants are dismissed.

### III.   Conclusion

For the reasons set forth above:

IT IS ORDERED that defendants' motion to dismiss is granted to the following extent: (1) plaintiffs' claims for violations of 42 U.S.C. § 1983 are DISMISSED with prejudice; (2) plaintiffs' state and federal law claims for age discrimination are DISMISSED without prejudice; (3) plaintiffs' state law wage payment claims are DISMISSED as to the individual defendants only. Plaintiffs' claims under the Louisiana Wage Payment Act against the LPCD remain before the Court.[61]

It is so ordered.

---

**56.** *See* 29 U.S.C. § 626(d) and *Foster v. Nat. Bank of Bossier City,* 857 F.2d 1058, 1059 (5th Cir.1988).

**57.** Rec. Doc. No. 14. Plaintiffs assert claims for "all age discrimination damages ... as allowed by La. R.S. 23:312 and 323." The procedure for maintaining an action under La. 23:212 and 323 is accomplished through La. R.S. 23:303.

**58.** *See* La. R.S. 23:303(c). See also *Simpson–Williams v. Andignac,* 04–1539 (La.App. 4 Cir. 4/20/2005), 902 So.2d 385.

**59.** *See* La. R.S. 23:631–642.

**60.** La. R.S. 23:632.

**61.** The Court has considered all of the arguments and contentions of the parties whether specifically discussed in this opinion.