# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 6, 2009

Charles R. Fulbruge III
Clerk

No. 07-30990

BRUCE A CASEY; JAMES BARRY BRYAN

Plaintiffs-Appellants

v.

LIVINGSTON PARISH COMMUNICATIONS DISTRICT; RONALD W
COTTON; FRED BANKS

Defendants-Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:06-CV-341

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Bruce A. Casey and James Barry Bryan (substituted for Brenda
Vulgamore, who died in April 2007), appeal. Casey and Vulgamore (Plaintiffs)
were employees of the Livingston Parish Communications District (LPCD).
Contested are: (1) the dismissal under Federal Rule of Civil Procedure 12(b)(6)
of Plaintiffs' claim under 42 U.S.C. § 1983 for termination without notice or a
hearing, in violation of due process; (2) the dismissal with prejudice under Rule

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

12(b)(1) of their state-law age-discrimination claim; and the summary judgment against claims (3) for retaliatory termination, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3), and (4) for liquidated damages and attorney's fees, pursuant to FLSA § 216(b). At issue is whether: (1) Plaintiffs had a property interest in their employment; (2) the district court's error in dismissing the state-law age-discrimination claims *with prejudice* was harmless; (3) Plaintiffs established a cognizable claim of retaliation under the FLSA; and (4) the district court erred in concluding that Defendants' error in calculating overtime pay was made in good faith. AFFIRMED.

I.

The LPCD, a political subdivision of the State of Louisiana, provides emergency communications services for Livingston Parish. In February 2005, Casey and Vulgamore began working at the LPCD's 911 Emergency Call Center. Casey was a shift supervisor; Vulgamore, a communications officer. Casey regularly supervised Vulgamore.

Two weeks after Plaintiffs began working for the LPCD, other officers started complaining to Cotton (LPCD's director, and a defendant in this action) that Vulgamore was sleeping on the job. Such conduct was, of course, a danger to public safety given Vulgamore's job duties, and the LPCD policy manual listed it as a cause for disciplinary action.

After receiving several complaints of this sort and conducting an investigation, Cotton suspended both Vulgamore, for sleeping on the job, and Casey, for showing favoritism to Vulgamore by allowing her to do so. Cotton completed an Employee Disciplinary Report for each suspended employee.

Neither Plaintiff disputed the above-described reasons cited for discipline when given the opportunity to do so in the report's "Employee Remarks" section. Only after termination did Plaintiffs contend Vulgamore was not sleeping on duty, although both conceded she occasionally "shut her eyes" while working.

Plaintiffs were formally terminated in May 2005. They appealed the decision to the Board of Commissioners, the LPCD's governing body. Banks (Chairman of the Board, also a defendant in this action) and the other three Board members voted to uphold Cotton's termination decision.

After termination, Casey filed a complaint with the United States Department of Labor (DOL), alleging the LPCD improperly calculated overtime pay. Although both Casey and Vulgamore had complained orally to their superiors during their tenure at the LPCD regarding delays in the payment of overtime, no written complaint was filed until this point, either internally or with the DOL.

The DOL found the LPCD had slightly, *but in good faith*, under-calculated the overtime pay, and determined Casey and Vulgamore were due $142.86 and $163.40, respectively. The DOL facilitated a settlement, and the LPCD offered Plaintiffs compensation in that amount. They refused to accept the funds, because receipt was contingent on signing a form with the DOL, releasing their back-wages claim under FLSA § 216(b). Plaintiffs later admitted in their depositions that the overtime pay owed to them, as calculated and determined by the DOL, was correct.

On 16 May 2006, Plaintiffs filed this action, seeking their unpaid overtime, liquidated damages, and attorney's fees, pursuant to FLSA § 216(b), and recovery for being terminated in retaliation for their oral requests for overtime pay, pursuant to FLSA § 215(a)(3). They also filed claims under § 1983, for being terminated without notice or a hearing, and under the Age Discrimination in Employment Act (ADEA). On 11 September 2006, they amended their complaint to add age-discrimination claims under the Louisiana Employment Discrimination Law (LEDL), and wage-payment claims under Louisiana's Wage Payment Law.

Defendants moved to dismiss all claims. On 23 February 2007, the district court granted Defendants' Rule 12(b)(6) motion to dismiss the § 1983 claim, concluding: the LPCD was not a part of the Louisiana State Civil Service System; therefore, Plaintiffs did not have a property interest in their jobs; and, without such an interest, there was no deprivation of Constitutional rights and privileges. It also granted Defendants' Rule 12(b)(1) motion to dismiss Plaintiffs' state and federal age-discrimination claims, finding neither claim procedurally proper. Plaintiffs had not initially filed a complaint with the Equal Employment Opportunity Commission (EEOC) before filing an action for their ADEA claim, nor had they given written notice to their employer, as required, before filing the LEDL claim. Finally, the court dismissed Plaintiffs' state wage-law claims against the individual Defendants, because they could only seek recovery against their employer, the LPCD. The wage claims against the LPCD remained before the court.

In June 2007, Defendants moved for summary judgment with respect to all of Plaintiffs' claims. The district court issued a second ruling on 20 September 2007, dismissing with prejudice the § 1983 and state and federal age-discrimination claims for the reasons provided in the above-discussed 23 February opinion. Additionally, it granted summary judgment against the remainder of Plaintiffs' claims, determining: they had not proved a *prima facie* case of retaliation under FLSA § 215(a)(3), because their internal, oral complaints regarding delay in receiving overtime pay did not constitute "protected activity" under the FLSA; and, even if they had proved a *prima facie* case, the Defendants could show a legitimate, non-discriminatory reason for the termination, one Plaintiffs could not prove was pre-textual: Vulgamore was sleeping on the job and Casey, as her supervisor, was aware of this and failed to take corrective action.

The district court also concluded that Plaintiffs were entitled to the overtime pay calculated by the DOL, but were not entitled to liquidated damages and attorney's fees under FLSA §216(b) because: per FLSA § 260, it was clear the overtime miscalculation was made in good faith, therefore, the district court, in its discretion, could refuse to award liquidated damages; and, because the LPCD offered Plaintiffs the amount of back wages determined by the DOL to be due (and agreed by the Plaintiffs to be correct) in January 2006, *before* Plaintiffs had retained counsel, they had no cognizable attorney's-fees claim under the statute. Finally, it dismissed with prejudice the Louisiana Wage Payment law claims against the individual Defendants for the reasons stated in the 23 February opinion; and, it refused to exercise supplemental jurisdiction under 28 U.S.C. § 1367, dismissing all pending state-law claims without prejudice.

## II.

A district court's dismissal of claims under Rule 12(b)(6) is reviewed *de novo. E.g., Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A summary judgment is also reviewed *de novo. E.g., H & A Land Corp. v. City of Kennedale*, 480 F.3d 336, 338 (5th Cir. 2007).

## A.

Plaintiffs contend, under § 1983, that they were terminated without a hearing in violation of their due-process rights. Defendants maintain that the district court properly dismissed the claim on their Rule 12(b)(6) motion. The district court concluded: the LPCD was not part of the Louisiana State Civil Service System (LSCSS) because LPCD was neither an instrumentality of the State under the traditional definition, nor had the Louisiana Legislature expressly indicated its desire that LPCD be included in the LSCSS. As such, Plaintiffs had no property interest in their employment that would validate their § 1983 claim.

Article 10, § 1(A) of the Louisiana Constitution states: "The state civil service is established and includes all persons holding offices and positions of trust or employment in the employ of the state, or any instrumentality thereof . . . ." LA. CONST. art. 10, § 1. If an entity is found to be an instrumentality of the State, it is constitutionally mandated that its employees be included in the civil-service system. *See Polk v. Edwards*, 626 So. 2d 1128, 1147 (La. 1993). Civil-service employees have a property interest in maintaining their positions, and, accordingly, cannot be terminated without due process. *See AFSCME, Council #17 v. State ex rel. Dep't of Health & Hosps.*, 789 So. 2d 1263, 1267-68 (La. 2001). In *Slowinski v. England Economic & Industrial Development District*, 828 So. 2d 520 (La. 2002), the Louisiana Supreme Court identified several factors used to determine whether an entity is an instrumentality of the State, including, *inter alia*: its powers, functions, degree of interrelationship with the State, geographic scope, and level of autonomy. *Id.* at 523.

If a political subdivision does not fit this definition, it is not constitutionally mandated to participate in the LSCSS. It may, however, still do so if there is clear legislative intent that the entity so participate, regardless of how local or autonomous the entity might be. *Id.* at 527. This intent is often shown by an express declaration that an entity shall be considered an instrumentality of the State, and, without such declaration, it would be "unreasonable to assume [the] legislature overlooked it". *Id.* at 528.

Essentially for the reasons stated by the district court in its comprehensive opinion, the LPCD is not an "instrumentality of the state", because it lacks the "extensive entanglement" with the State to be so defined under *Slowinski*. *Id.* at 526; *Casey v. Livingston Parish Commc'ns Dist.*, No. 06-341-FJD-DLD (M.D. La. 23 Feb. 2007) (District Court's Ruling re: defendants' motion to dismiss). We additionally determine that the Louisiana Legislature did not intend the LPCD to be a part of the LSCSS, as there is no language suggesting such intent in the

statutory authority creating communications districts. (Because we have determined the LPCD is not an instrumentality of the State, there is no need to decide whether Plaintiffs' failure to meet the requirements of Article 10, § 7 of the Louisiana Constitution–mandating that all classified civil servants take a competitive exam–prevented them from obtaining permanent classified civil-service status.)

Accordingly, the district court properly dismissed this claim: without being a part of the LSCSS, Plaintiffs had no property interest in their jobs and were not entitled to due process before being terminated. Therefore, their § 1983 claim necessarily fails.

B.

Plaintiffs next contend the district court erroneously dismissed their state age-discrimination claims with prejudice; and, because the time limitations have run on those claims, our court should apply equitable tolling to them during the pendency of their federal claims and additional state administrative proceedings. Defendants do not contest the district court's error in dismissing the claims with prejudice (vice without); rather, they claim this is harmless error in the light of Plaintiffs' admission that their state-law age-discrimination claims are time barred. Moreover, they assert that Plaintiffs' equitable-tolling contention should be rejected, as they raise it for the first time on appeal.

The district court dismissed this state-law claim under LEDL, codified in LA. REV. STAT. ANN. §§ 23:312 and 23:323, for failure to follow the procedural requirements, pursuant to LA. REV. STAT. ANN. § 23:303. Under § 23:303(C), a plaintiff intending to pursue a discrimination claim against his employer must give written notice of this fact at least 30 days before initiating litigation. *See* LA. REV. STAT. ANN. § 23:303(C). In its 23 February 2007 order, the district court concluded: because there was no evidence Plaintiffs followed this procedure, their claims were premature and must be dismissed.

The district court reaffirmed its dismissal of the state-law age-discrimination claims in its 20 September 2007 summary-judgment ruling; however, it erroneously dismissed the claim *with prejudice*. Nonetheless, as discussed below, this error was harmless, as the claims were time barred and could not have been pursued even if the district court had properly dismissed without prejudice.

Under § 23:303(D), any claim filed under LEDL is subject to a one-year prescriptive period. LA. REV. STAT. ANN. § 23:303(D); *see Thompson v. Sysco Corp.*, 2008 WL 65582, at *2 (M.D. La. 4 Jan. 2008). The alleged injury occurred on 24 May 2005, when Plaintiffs were terminated; they did not file their amended complaint, adding the state-law age discrimination claims, until 11 September 2006. In short, the one-year prescriptive period had run.

As noted, Plaintiffs did not raise equitable tolling in district court. Generally, contentions not raised in district court are waived. We will consider an issue raised for the first time on appeal only when it is a purely legal question *and* consideration is necessary to avoid a miscarriage of justice. *E.g., Langhoff Props., LLC v. BP Prods. N. Am. Inc.*, 519 F.3d 256, 261 n.12 (5th Cir. 2008). Such circumstances are not present in this action. Plaintiffs simply failed to meet the procedural requirements of pursuing their claim; equitable tolling should not be used to excuse that failure.

## C.

Plaintiffs next contest the summary judgment against their anti-retaliation claim, pursuant to FLSA § 215(a)(3). Under the familiar burden-shifting formula, in order to establish a *prima facie* case of retaliation, a plaintiff must show: (1) he is engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *E.g., Pineda v. United Parcel Serv., Inc.* 360 F.3d 483, 487 (5th Cir. 2004). Once a *prima facie* case is established, the burden shifts to the

defendant to prove a legitimate, non-discriminatory purpose for the adverse employment action. If the defendant meets this burden, it shifts back to the plaintiff, who must prove that the employer's stated reason for the adverse employment action was merely pretextual. *Id.*

Primarily at issue in district court was whether the first element of the *prima facie* case was satisfied. Section 215(a)(3) of the FLSA establishes: it will be unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has *filed any complaint* or instituted or caused to be instituted any proceeding under or related to this chapter". 29 U.S.C. § 215(a)(3) (emphasis added). Plaintiffs contended they were engaged in protected activity because their above-discussed internal, oral complaints constituted "filing a complaint" under FLSA § 215(a)(3).

The district court, however, agreed with the Defendants and concluded that those complaints should not be considered protected activity under the FLSA, because it was inconsistent with its plain language. Further, it held: even if those complaints qualified as protected activity, Plaintiffs had failed to establish a *prima facie* case of retaliation, because there was insufficient evidence to establish the requisite causal connection between the protected activity and termination. Moreover, it held: even if a *prima facie* case had been established, the claim failed because Defendants effectively rebutted the presumption of retaliatory intent by articulating a legitimate, non-discriminatory reason for Plaintiffs' termination, that could not be shown to be pretextual–Vulgamore was sleeping on the job; and Casey both knew about, and condoned, it.

When the district court ruled, our court had not yet addressed the contours of protected activity under FLSA § 215(a)(3), specifically, what constitutes "fil[ing] any complaint" under that section. Although the Second Circuit had previously determined that the statute's plain language limited the claim to

9

filing a formal complaint with a government agency, *see Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), the majority interpretation of FLSA § 215(a)(3) was that an informal, internal complaint may constitute protected activity. *See Lambert v. Ackerley*, 180 F.3d 997, 1003-05 (9th Cir. 1999) (en banc); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44-45 (1st Cir. 1999); *EEOC v. Romeo Comty. Sch.*, 976 F.2d 985, 989-90 (6th Cir. 1992); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989); *Brock v. Richardson*, 812 F.2d 121, 123-25 (3d Cir. 1987); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir. 1975).

Between the district court's decision and this appeal, our court joined the majority position. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617 (5th Cir. 2008). *Hagan* adopted the majority rule, which "allows an informal, internal complaint to constitute protected activity under [FLSA] § 215(a)(3)". *Id.* at 626. Our court noted, however, that this rule came with some "necessary qualifications", and that "not all 'abstract grumblings' or vague expressions of discontent are actionable as complaints". *Id.* (quoting the district court's opinion, *Hagan v. Echostar Satellite, L.L.C.*, 2007 WL 543441, at *4 (S.D. Tex. 16 Feb. 2007)).

In any event, we need not determine on which side of the line between an actionable and non-actionable complaint Plaintiffs' comments fall. Essentially for the reasons stated in the district court's 20 September summary-judgment ruling, we hold: even assuming, *arguendo*, Plaintiffs' informal complaints were actionable, rather than mere "vague expressions of discontent", the district court properly concluded the claim failed because (1) Plaintiffs did not establish a causal connection between the protected activity and the adverse employment action (termination), and (2) even had they done so, Defendants presented a legitimate, non-discriminatory reason for the firings, one Plaintiffs could not show was pretextual.

D.

For their final claim, Plaintiffs contend the district court erred in ruling: the LPCD's mistake in calculating overtime pay was made in good faith; and, therefore, they were *not* entitled to liquidated damages under FLSA § 216(b). (We, at least, assume this is the Plaintiffs' contention. Their briefing is wholly inadequate—one half of a page of conclusory statements and speculative allegations.) Defendants claim the good-faith ruling was proper. (The district court additionally denied attorney's fees under FLSA § 216(b). On appeal, Plaintiffs have *not* contested that ruling. Needless to say, issues not raised on appeal are deemed waived. *E.g., United States v. Jimenez*, 509 F.3d 682, 693 n.10 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 2924 (2008).)

Under FLSA § 216(b), an employer who violates FLSA § 207 (the provision regarding unpaid overtime) shall be liable to affected employees for both the unpaid overtime and, in some instances, an additional equal amount as liquidated damages. *See* 29 U.S.C. § 216(b). Pursuant to FLSA § 260, however, if an employer can show that the act or omission leading to the unpaid overtime was made in good faith, the court may, in its discretion, award no liquidated damages. *See* 29 U.S.C. § 260.

Essentially for the reasons stated in the district court's 20 September summary-judgment ruling, it was not error to rule that the LPCD acted in good faith when it miscalculated the Plaintiffs' overtime wages. LPCD officials provided detailed affidavits explaining how they made the overtime miscalculation, stating that at no time prior to an audit conducted by the DOL in the summer of 2005 did they believe the LPCD was in violation of the FLSA. Additionally, upon this audit, the DOL specifically found the miscalculations to have been made in good faith. Plaintiffs' above-referenced conclusory and speculative statements concerning bad faith are not sufficient to defeat this ruling.

III.

For the foregoing reasons, the judgment is AFFIRMED.