CHEHARDY, C.J.
*1036 Plaintiff-appellant, the City of Harahan (the "City"), seeks review of the trial court's May 4, 2018 judgment maintaining the exception of prescription in favor of defendants-appellees, Wood Materials, L.L.C. and Wood Resources, L.L.C. (the "Wood Companies"), and dismissing the City's reconventional demand seeking to enforce an alleged "use violation" against the Wood Companies with prejudice. For the following reasons, we affirm the trial court's judgment.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
This litigation involves the commercial composting activities of the Wood Companies, who operate a composting facility located in the Non-Urban Batture District (the "Batture"), which is situated within the City's corporate limits.[1] The facts in this matter are not in dispute. Since the 1960's, the Wood Companies have been involved in various activities at their industrial materials facility located on the Batture of the Mississippi River. Specifically, between the hours of 6:00 p.m. to 6:00 a.m., the Wood Companies perform dredging, excavating and selling of sand, mooring, and towing out of its facility within the Batture. In particular, the Wood Companies have been engaged in composting activities on their property since 2010.
On December 19, 2011, the East Jefferson Levee District issued a construction permit to the Wood Companies for the construction of an "organic soil composting site" within the Batture. The operating permit, also issued on December 19, 2011 for the calendar year 2012, contained a "[d]escription of [p]ermitted [a]ctivity" that included "[c]onstruction and operation of sandpits and limestone stockpiles & organic soil composting." The operating permits subsequently issued to the Wood Companies for the calendar years 2013 through 2016 also describe composting activity as a permitted activity.
In August 2012, the Wood Companies were hired by the City to store, grind, and dispose of trees and other organic debris left behind in the City following Hurricane Isaac. In order to fulfill its obligations under the contract, the Wood Companies collected and composted the hurricane debris at its facilities located within the Batture. In October 2012, the City paid the Wood Companies $23,413.00 for the composting work they performed pursuant to the contract.
On June 9, 2016, the Wood Companies filed a declaratory judgment action against *1037 the City with regard to the validity of Proposed Ordinance No. 2016-3. The Proposed Ordinance would, among other things, amend section XV of the City Zoning Ordinance ("CZO") to remove "barge mooring and holding facilities" from the permitted uses for the Batture and impose an hours-of-operation restriction. Specifically, the Wood Companies sought a declaration that its composting operations within the Batture constituted a nonconforming use in accordance with La. R.S. 9:5625, and that any attempt to hold the Wood Companies in violation of the CZO is prescribed by La. R.S. 9:5625(C) and the grandfather provision found in La. R.S. 9:5625(B).
The City responded by filing a reconventional demand, which sought a declaration that the Wood Companies' operation of a composting facility within the Batture is prohibited by the CZO, and which sought injunctive relief enjoining the Wood Companies from continuing to operate the composting facility. In response to the City's reconventional demand, the Wood Companies raised the exception of prescription. Specifically, the Wood Companies argued that, based upon the City's concession that it had written notice of the Wood Companies' composting activities, that are now alleged to be violations of zoning and use regulations, no later than February 15, 2012, more than three years prior to filing suit on July 21, 2016, the City's right to enforce any alleged violation of the CZO regarding their composting operations had prescribed pursuant to La. R.S. 9:5625(C), which establishes a three-year prescriptive period for public instrumentalities within Jefferson Parish, including the City of Harahan.
In opposition, the City argued that La. R.S. 9:5625(A)(3) -not La. R.S. 9:5625(C) -was the applicable provision for actions challenging zoning use regulation violations. Pursuant to La. R.S. 9:5625(A)(3), all municipalities (except the Parish of Orleans, the City of New Orleans and East Baton Rouge Parish) have five years from the date on which the municipality was first actually notified in writing of such violation in which to bring an action. Consequently, the City averred that its action against the Wood Companies had not prescribed.
The Wood Companies' exception came for hearing on April 25, 2018. At the close of the hearing, the trial court took the matter under advisement. Thereafter, on May 4, 2018, the trial court issued judgment, with written reasons, maintaining the Wood Companies' exception and dismissing the City's reconventional demand against the Wood Companies with prejudice. The trial court determined that the City had actual notice in writing of the Wood Companies' alleged violation no later than October 2012, and, thus, under La. R.S. 9:5625(C), the City's suit brought more than three years later was prescribed.
It is from this judgment that the City timely filed the instant appeal.
ASSIGNMENTS OF ERROR
On appeal, the City avers that the trial court erred: (1) in its interpretation of La. R.S. 9:5625 in concluding that the enforcement provisions set forth in La. R.S. 9:5625(C) apply to the City of Harahan; and (2) in failing to find that the five-year prescriptive period found in La. R.S. 9:5625(A)(3) controls this action, which period commenced from the date upon which the City's zoning authority received actual notice in writing of the Wood Companies' violation of the CZO's use regulation.
LAW AND DISCUSSION
Standard of Review and Statutory Construction
The issues in this case turn on the proper interpretation of La. R.S. 9:5625. When *1038 the matter before the Court involves the interpretation of a statute, it is a question of law, and a de novo standard of review is applied. Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't. of Econ. Dev. , 10-0193 (La. 1/19/11), 56 So.3d 181, 187. Thus, we review the trial court's judgment under a de novo standard of review, without deference to the legal conclusions of the trial court below. Id. ; Benjamin v. Zeichner , 12-1763 (La. 4/5/13), 113 So.3d 197, 201.
In Benjamin , the Louisiana Supreme Court stated that "the function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government." Id. The Court further explained the following regarding statutory interpretation:
The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law. The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the [L]egislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. Further, the legislature is presumed to act with full knowledge of well-settled principles of statutory construction. [Citations omitted.]
Id. at 202. The object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result. Richard v. Hall , 03-1488 (La. 4/23/04), 874 So.2d 131, 149 ; SWAT 24 Shreveport Bossier, Inc. v. Bond , 00-1695 (La. 6/29/01), 808 So.2d 294, 302. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the Legislature. Succession of Boyter , 99-0761 (La. 1/7/00), 756 So.2d 1122, 1129.
Zoning is designed to foster improvements by confining certain classes of buildings and uses to certain localities without imposing undue hardship on property owners. City of New Orleans v. Elms , 566 So.2d 626, 628 (La. 1990). "The essence of zoning is territorial division in keeping with the character of the lands and structures and their peculiar suitability for particular uses, and the uniformity of use within the division. The traditional purpose of zoning is to reduce or eliminate the adverse effects of one type of land use on another by segregating different uses into different zoning districts." Id.
Our jurisprudence clearly states that zoning by its nature is a legislative function, the authority for which flows from the police power of governmental bodies. King v. Caddo Parish Com'n , 97-1873 (La. 10/20/98), 719 So.2d 410, 418. La Const. art. VI, § 17 expressly grants the power to enact zoning regulations to all local governments. St. Charles Gaming Co., Inc. v. Riverboat Gaming , 94-2697 (La. 1/17/95), 648 So.2d 1310, 1316.
*1039 La. R.S. 33:4721 provides, in part, that "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict the height, number of stories, and size of structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes." Additionally, La. R.S. 33:4723 indicates that zoning regulations shall, among other things, "be made with reasonable consideration of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout the municipality."
With these legal precepts in mind, we examine the language of the statute, La. R.S. 9:5625, which provides:
5625. Violation of zoning restriction, building restriction, or subdivision regulation
A. (1) All actions civil or criminal, created by statute, ordinance, or otherwise, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by parishes, municipalities, or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulation, imposed by any parish, municipality, or an instrumentality thereof, and based upon the violation by any person, firm, or corporation of such restriction or regulation, must be brought within five years from the first act constituting the commission of the violation.
(2) Where a violation has existed for a period of two years prior to August 1, 1956, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, the action must be brought within one year from and after August 1, 1956.
(3) With reference to violations of use regulations all such actions, civil or criminal, except those actions created for the purpose of amortization of nonconforming signs and billboards in conformity with the provisions of R.S. 33:4722, must be brought within five years from the date the parish, municipality, and the properly authorized instrumentality or agency thereof if such agency has been designated, first had been actually notified in writing of such violation.
(4) Except as relates to nonconforming signs and billboards, any prescription heretofore accrued by the passage of two years shall not be interrupted, disturbed, or lost by operation of the provisions of this Section.
B. In all cases where the prescription provided for herein has accrued, the particular property involved in the violation of the zoning restriction, building restriction or subdivision regulation shall enjoy the same legal status as land uses, construction features of buildings or subdivisions made nonconforming by the adoption of any zoning restriction, building restriction or subdivision regulation. However, the governing authority may provide for the removal of nonconforming signs and billboards in accord with the provisions of R.S. 33:4722.
*1040 C. Notwithstanding the provisions of Section A of this Section, the following provisions shall be applicable only to the parishes of East Baton Rouge and Jefferson or their instrumentalities. All actions, civil or criminal, created by statute, ordinance, or otherwise, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by such parishes or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulation, imposed by any such parish or their instrumentalities, and based upon the violation by any person, firm, or corporation of such restriction or regulation, must be brought within three years from the date such parish or its properly authorized instrumentality or agency, if such agency has been designated, received actual notice in writing of such violation, and except for violations of use regulations, all such actions, civil or criminal, must be brought within five years from the date of the first act constituting the commission of the violation. However, in the parish of East Baton Rouge, and municipalities included within such parish, all actions, civil or criminal, for violations of use regulations must be brought within five years from the date of the first act constituting the commission of the violation.
D. In the parishes of East Baton Rouge and Jefferson, in cases where the parish or its instrumentality, after receiving notification of a violation, institutes an investigation or other administrative or judicial proceeding in order to seek a cessation of the violation and during the course of such investigation or proceeding makes the determination that the violation has in fact ceased, prescription shall be interrupted and if any recurrence or new violation commences thereafter, prescription will begin to accrue anew upon the date the parish or its properly authorized instrumentality or agency, if such agency has been designated, receives actual notice in writing of such recurrence or new violation. Except for violations of use regulations, all such actions, civil or criminal, must be brought within five years from the date the recurrence or new act constituting the commission of the violation. However, in the parish of East Baton Rouge, and municipalities included within such parish, all actions, civil or criminal, for violations of use regulations must be brought within five years from the date of the first act constituting the commission of the violation.
E. The provisions of this Section shall supersede any other provisions of law inconsistent herewith.
F. The provisions of Subsections C and D of this section shall not apply in the parish of Orleans or the city of New Orleans.
G. (1) The provisions of this Section shall not apply to property or areas which have been identified as historic districts, historical preservations or landmarks by any historic preservation district commission, landmarks commission, or the planning or zoning commission of a governing authority; however, the prescriptive period within which to bring an action *1041 to enforce a zoning restriction or regulation or a violation thereof shall be ten years from the first act constituting the commission of the violation.
(2) The provisions of this Subsection shall apply only to zoning or planning restrictions made by a municipality or parish, or other municipal or parish entity responsible for zoning, planning, or building restrictions.
(3)(a) Notwithstanding the provisions of Paragraph (1) of this Subsection, the prescriptive period set forth therein regarding any action to enforce a zoning restriction or regulation or a violation thereof in the Vieux Carre section of the city of New Orleans shall begin to run on the date the properly authorized agency of the city actually receives written notice of the violation.
(b) The provisions of Subparagraph (a) of this Paragraph shall not divest a person of any right obtained as a result of prescription that accrued prior to August 15, 2007.
Interpretation and Proper Application of La. R.S. 9:5625
The City argues that the trial court committed legal error in applying the three-year prescriptive period set forth in subsection (C) of La. R.S. 9:5625 to the City's enforcement action against the Wood Companies for its violation of one of the City's use regulations. Specifically, the City argues that the five-year prescriptive period for the violation of a use regulation found in subsection (A)(3), governs the City's enforcement action against the Wood Companies, not subsection (C). The City further contends the record is devoid of any evidence that it had actual written notice of the Wood Companies' violation of the City's zoning ordinance use regulations at any time prior to July 25, 2011. Because this date is within five years of the date the City filed suit on July 25, 2016 to enjoin the composting activity, the City contends its action against the Wood Companies to enforce the alleged nonconforming use violation was timely, and therefore, not prescribed.
In contrast, the Wood Companies aver, and the trial court agreed, that with respect to enforcement actions challenging violations of a zoning restriction, building restriction, subdivision regulation or use regulation, all political subdivisions that are located within the Parish of Jefferson, including the City of Harahan, are subject to the prescriptive periods set forth in subsection (C), rather than the prescriptive period contained in subsection A(3). With respect to enforcement actions challenging the violation of a use regulation, in particular, the Wood Companies argue that subsection (C) provides a three-year prescriptive period, which commences upon receipt of actual notice in writing of the violation. Because the City conceded that it had actual notice in writing of the Wood Companies' composting activities no later than October 2012, the Wood Companies argue that the instant suit filed by the City against them in July 2016 is prescribed.
Based upon our reading of La. R.S. 9:5625 in its entirety, specifically when reading subsections (A)(3) and (C) together, we find that the language is susceptible of different meanings. Consequently, we turn to the statute's legislative history in order to ascertain the Legislature's intent and purpose in enacting these provisions. See Benjamin , 113 So.3d at 202.
Legislative History of La. R.S. 9:5625
Louisiana Revised Statute 9:5625 is contained within the Civil Code Ancillaries on Prescription, La. R.S. 9:5601 et seq. Within the statute, the Legislature provided particular *1042 prescriptive periods pertaining to enforcement actions that involve the violation of a zoning restriction, building restriction, subdivision regulation, and/or use regulation. As originally enacted, La. R.S. 9:5625 provided a single set of prescriptive periods that pertained to all parishes state-wide, as set forth currently in subsection (A) of the statute.
1. 1993 Amendments
The Legislature amended the statute in 1993, at which time it addressed the parishes, municipalities, or their instrumentalities within the state whose populations exceeded 325,000 and enacted specific prescriptive periods applicable only in those parishes. Specifically, House Bill 931 added subsections (C) through (F) to La. R.S. 9:5625.[2] Subsection (C) as enacted in 1993 provided:
C. Notwithstanding the provisions of Subsection A, the following provisions shall be applicable only to any parish, municipality, or its instrumentality having a population over three hundred twenty-five thousand. All actions, civil or criminal, created by statute, ordinance, or otherwise, except those actions created for the purpose of amortization of nonconforming signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by such parishes, municipalities, or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulations, imposed by any such parish, municipality, or their instrumentalities, and based upon the violation by any person, firm, or corporation of such restriction or regulation, must be brought within three years from the date such parish, municipality, or its properly authorized instrumentality or agency, if such agency has been designated, received actual notice in writing of such violation, and except for violations of use regulations, all such actions, civil or criminal, must be brought within five years from the date of the first act constituting the commission of the violation. However, in a parish having a population of over three-hundred twenty-five thousand but not more than four hundred thousand, and municipalities included within such parish, all actions, civil or criminal, for violations of use regulations must be brought within five years from the date of the first act constituting the commission of the violation.
1993 La. Acts 1025, 1993 La. HB 931.
Pursuant to the language of the statute, we find that the Legislature's 1993 amendment to add subsection (C) was intended solely to have a geographical effect and was meant to apply to all forms of government-i.e. , parishes, municipalities, or their instrumentalities-so long as they were situated within a parish whose population exceeded 325,000. In 1993, according to the latest U.S. census figures, the only parishes within the State whose populations exceeded 325,000 and, thus, were affected by the population threshold and subject to the amendment, were East Baton Rouge Parish and Jefferson Parish.[3]
*1043 Consequently, following the effective date of the 1993 amendment, the prescriptive periods set forth in La. R.S. 9:5625(C) applied to any parish entity, any municipal entity, or their instrumentalities, located within Jefferson Parish, which included the City of Harahan .[4]
Accordingly, following the 1993 amendment to La. R.S. 9:5625 enacting subsection (C), we find that any enforcement action that involved the violation of a zoning restriction, building restriction, or subdivision regulation occurring within the Parish of Jefferson, including the City of Harahan-whether the restriction and/or regulation violated was created by the City or the parish-at-large-had to be brought within three years from the date written notice of the violation was received and no later than five years "from the first act constituting the commission of the violation." And with respect to enforcement actions involving the violation of a use regulation, we find that La. R.S. 9:5625(C), as enacted in 1993, required the City, by virtue of its being located within a parish whose population exceeded 325,000, to institute such an action within three years from the date it received actual notice in writing of the violation.
2. 2011 Amendments
In 2011, following Hurricanes Katrina and Rita, and the resulting shift in populations occurring in particular areas of the State as reflected in the 2010 U.S. census, Senate Bill 9 was introduced into the Legislature to amend certain provisions within Title 9 of the Louisiana Revised Statutes (including subsections (C), (D) and (F) of La. R.S. 9:5625 ), which were "limited in applicability to certain political subdivisions or local areas based upon population classifications[.]"[5] According to the preface of Senate Bill No. 9, the act, entitled "Census[,]"[6] was intended "to specify applicability to one or more political subdivisions or local areas[ ]" and "to adjust population categories to retain applicability [.]" [Emphasis supplied.]
With respect to the Legislature's amendment to La. R.S. 9:5625(C), in particular, the 2011 amendment removed the statute's prior reference regarding its applicability based upon a population threshold of 325,000, and replaced the numerical reference with the particular parishes affected; namely, East Baton Rouge Parish and Jefferson Parish. The table attached to Senate Bill No. 9, Engrossed, suggests to us that the Legislature intended for La. R.S. 9:5625(C), as amended, to apply to the entirety of East Baton Rouge and Jefferson Parishes, as the two identified "affected locations[,]" including all political subdivisions located within those parishes, rather than solely to the parishes-at-large or specific governmental instrumentalities as posited by the City.[7]
Our review of the legislative history for La. R.S. 9:5625(C) convinces us that *1044 the Legislature's intent in amending subsection (C) was to retain and/or continue the applicability of La. R.S. 9:5625(C) to all of Jefferson Parish, including the City of Harahan. We glean nothing in the statute's legislative history that supports the City's contention that the 2011 amendment sought to alter or impose a more restrictive prescriptive period applicable only to Jefferson Parish or its "instrumentalities," and a less restrictive prescriptive period applicable to the municipalities located within Jefferson Parish. In this regard, we agree with the Wood Companies that "it is simply not logical to interpret the amendment to reduce the applicability of [La. R.S.] 9:5625(C) contrary to the [L]egislature's stated intent to 'retain applicability.' That intent can only be to have [La. R.S.] 9:5625(C) apply throughout Jefferson and East Baton Rouge Parishes" as it did prior to the 2011 amendment. In short, we find that the Legislature did not intend to alter the scope of La. R.S. 9:5625 in 2011 when it amended the statute; rather, the Legislature merely intended to update the specified reach of La. R.S. 9:5625(C) by specifically naming the affected parishes and retaining applicability.
Applicability of La. R.S. 9:5625(C) to the City of Harahan
The City argues that pursuant to La. R.S. 9:5625, as amended in 2011, subsection (A)(3), not subsection (C), which applies to the Parish of Jefferson "or [its] instrumentalities," governs the applicable prescriptive period for its enforcement action against the Wood Companies because the City is an "instrumentality" of the State, not of Jefferson Parish. According to the City, subsection (C), as amended, applies only to zoning restriction violations enacted by the Jefferson Parish government and does not apply to zoning restriction violations enacted by the municipalities or other governmental entities situated within Jefferson Parish, which the City claims are governed by La. R.S. 9:5625(A)(3).
We find no merit to the City's argument. The language of La. R.S. 9:5625(C) states that its provisions "shall be applicable only to the Parishes of East Baton Rouge and Jefferson or their instrumentalities." [Emphasis supplied.] Clearly, the City of Harahan is located within Jefferson Parish and, as such, relying upon the statute's legislative history, we find subsection (C) applies to all political subdivisions within Jefferson Parish, including the City of Harahan. To apply a literal interpretation of the 2011 amendment to subsection (C) as the City urges (i.e. , to distinguish the larger political subdivision, Jefferson Parish, from the smaller political subdivisions located within it, including "municipalities," "agencies" and "instrumentalities"), would lead to an absurd result, and would be tantamount to concluding that the Legislature intended for the City, and other political subdivisions within Jefferson Parish, to enjoy a greater latitude in enforcing its restrictive zoning laws than the parish-at-large. This argument is simply not supported by the statute's legislative history, nor does the City cite any legal authority to support its position. In fact, the City's argument is actually contrary to the Legislature's stated intention "to retain applicability," not to restrict or expand it.
Accordingly, we find the trial court did not legally err in concluding that the City of Harahan is subject to the prescriptive periods governing enforcement actions as set forth in La. R.S. 9:5625(C), as amended.
Applicability of La. R.S. 9:5625(C) to "Use Violations" Occurring Within Jefferson Parish
Now that we have established that the City is subject to the enforcement provisions *1045 of La. R.S. 9:5625(C), we turn to the City's argument that La. R.S. 9:5625(C) does not apply at all to violations of use regulations, except for "use violations" occurring in East Baton Rouge Parish.[8] According to the City, enforcement actions for use violations occurring in every other parish of the State, including Jefferson Parish, are subject solely to the provisions of La. R.S. 9:5625(A)(3).[9] Specifically, the City posits that La. R.S. 9:5625 distinguishes those actions involving zoning restrictions, building restrictions, and subdivision regulations from those actions involving use regulations. In this regard, the City argues that La. R.S. 9:5625 mandates a five-year prescriptive period applicable to all use violations occurring in every parish throughout the State (except the Parish of Orleans and the City of New Orleans); the only distinction between use violations occurring in East Baton Rouge Parish and those occurring in all other parishes being the date upon which the five-year period begins to run. For use violations occurring in East Baton Rouge Parish, the five-year prescriptive period commences from the date of the "first act" constituting the use violation, whereas for use violations occurring in every other parish of the State (except the Parish of Orleans and the City of New Orleans), including the Parish of Jefferson, the five-year prescriptive period commences from the date upon which the parish first had actual notice of the use violation in writing.
Moreover, the City argues that the three-year prescriptive period found in La. R.S. 9:5625(C) applies only to actions seeking to enforce a "zoning restriction, building restriction, or subdivision regulation" where actual notice in writing of a violation is received, and not to enforcement actions for use violations.[10] According to the City, the express language of subsection (C) excepts "use violations" from its effect. Specifically, the City posits that after establishing the three-year prescriptive period for actions involving actual notice in writing of a violation of a "zoning restriction, building restriction, or subdivision regulation," subsection (C) then provides that "... and except for violations of use regulations, all such actions ... must be brought within five years from the date of the first act constituting the commission of *1046 the violation." The City maintains that subsection (C)'s exception for actions involving use violations occurring in Jefferson Parish actually "conforms" subsection (C) to subsection (A)(3) such that, the five-year prescriptive period for violations of use regulations occurring in all parishes (except East Baton Rouge Parish, the Parish of Orleans and the City of New Orleans), commences to run from the date actual notice in writing of the violation is received. Because "actual notice" of a violation of a use regulation is what is required by La. R.S. 9:5625(A)(3), the City contends that use violations were excepted from the "three year actual notice/five year first act" rule established in subsection (C) for the Parishes of East Baton Rouge and Jefferson "so that there is no confusion." We disagree.
We find that the City's interpretation of La. R.S. 9:5625 -that enforcement actions for violations of use regulations are not covered at all by La. R.S.9:5625(C), except for use violations occurring within the Parish of East Baton Rouge (and the Parish of Orleans and the City of New Orleans)-is inaccurate; therefore, we reject it. As it relates to Jefferson Parish, our interpretation of the statute leads us to conclude that the second sentence of subsection (C), when read in its entirety, provides a three-year prescriptive period for all enforcement actions challenging zoning restrictions, building restrictions, subdivision regulations or use regulations commencing from the date of actual notice in writing, and a five-year peremptive period for these actions, except for violations of use regulations , commencing from the date of the first act constituting the violation. In short, we conclude that subsection (C) excepts enforcement actions for the violation of a use regulation occurring in Jefferson Parish from the scope of the five-year preemptive period, thereby maintaining both the three-year prescriptive period and the requirement for written notice for actions involving a use violation.
Further, we find that there would have been no reason for the Legislature to specifically include the exception for "use violations" within subsection (C) if it did not intend for subsection (C) to apply to use violations at all . In this regard, we find the City's interpretation, i.e. , that all use regulations are subject to the five-year prescriptive period found in subsection (A)(3) , renders the reference within subsection (C) excepting violations of use regulations meaningless. Moreover, had the Legislature intended for the excepted actions to be governed by the five-year prescriptive period in subsection (A)(3), and not the three-year prescriptive period in subsection (C), it could have stated as such directly within subsection (C). It did not do so. This omission leads us to conclude, therefore, that it was not the Legislature's intent for enforcement actions involving use violations occurring within Jefferson Parish, including the City of Harahan, to be governed by the prescriptive period found in subsection (A)(3) as the City contends, but rather, the Legislature intended for subsection (C) to govern these actions. This assignment of error is without merit.
In sum, based upon our review of the legislative history of La. R.S. 9:5625, we conclude the trial court correctly determined that La. R.S. 9:5625(C) governs this action. We find that the Legislature intended for the enforcement provisions set forth in subsection (C) to apply to all political subdivisions within Jefferson Parish, including municipalities such as the City of Harahan. Accordingly, we hold that any enforcement action by the City for the violation of a use regulation provided within its zoning ordinance and established through the authority granted to the City by the Legislature to enact zoning regulations, *1047 is governed by La. R.S. 9:5625(C) and, thus, subject to a three-year prescriptive period commencing on the date actual notice in writing of a use violation is received by the City.
The record confirms, and the City concedes, that the City had written notice of the Wood Companies' composting activities no later than October 2012, when the City paid them $23,413.00 for completing work under a contract they had with the City to store, grind, and dispose of trees and other organic debris following Hurricane Isaac. The City did not file suit to enjoin the Wood Companies' composting activities until July 25, 2016. Thus, the City's right to enforce the Wood Companies' alleged use violation at issue herein was prescribed prior to the City's filing of its reconventional demand.
CONCLUSION
For the foregoing reasons, we find the trial court properly maintained the exception of prescription brought by Wood Materials, L.L.C. and Wood Resources, L.L.C., and in dismissing the City of Harahan's reconventional demand filed against them, with prejudice. Accordingly, we affirm the trial court's judgment.
AFFIRMED.
DISSENTS.
JJM
MOLAISON, J., DISSENTS.
For the following reasons, I respectfully dissent from the majority's decision to affirm the trial court's judgment.
This Court has previously recognized in In re Declaratory Judgment For City of Harahan , 01-928 (La. App. 5 Cir. 1/15/02), 807 So.2d 997, that, pursuant to La. R.S. 33:321, et seq., "The City of Harahan (the City) is a Lawrason Act municipality and operates pursuant to a mayor-board of alderman form of government." Id., at 998. The term "municipality" is defined in La. Const. art. 6, § 44 (3) as "an incorporated city, town, or village." In addition, Harahan also qualifies as a "local governmental subdivision"[11] and a "political subdivision."[12]
The term "instrumentality" does not appear to have been assigned a formal legal definition in Louisiana. However, my review of jurisprudence and various statutes leads me to conclude that the City of Harahan is not an "instrumentality" of Jefferson Parish in the same sense in which the term is commonly used in other circumstances. For example, in Polk v. Edwards , 626 So.2d 1128 (La. 1993), the Louisiana Supreme Court set forth several considerations to determine whether an entity is an instrumentality of the state. These included: whether the entity was accountable to other branches of government "through a system of audits, reports, and legislative oversight, and through financial disclosure," whether it could enter into a contract over a certain amount without authorization, and whether it could promulgate its own rules or regulations without legislative authority and publication of notice. Importantly, the court observed in relevant part, "[p]olitical subdivisions, which include municipal and parish governments, are entrusted with the power of taxation and expropriation, and as *1048 mentioned above, are not instrumentalities of the state." Id. at 526.
I am also guided by the framework for analysis used by the Louisiana Supreme Court in Slowinski v. England Economic and Industrial Development District , 02-0189 (La. 10/15/02), 828 So.2d 520. In that case, the court considered several factors in making the determination of instrumentality, including answering the question of whether the entity was "an arm of the state" or if it was "sufficiently detached from the state that is more local and autonomous in nature, similar to a parish or municipal government." Id. , at 523. In Slowinski , supra , the Court took into account the legislature's own actions in expressly defining an entity as an "instrumentality" of the state in various statutes:[13]
Because of the weighty consequences that arise when the legislature includes the term of art, "instrumentality of the state," i.e., an entity is required to participate in the state personnel management bureaucracy, it is unreasonable to assume our legislature overlooked it, when they made their intent proof positive in the statutes outlined above. See, e.g., Aultman v. Entergy Corp. , 98-2244 (La. App. 1 Cir. 11/5/99), 747 So.2d 1151, 1155 ("Had the legislature intended to adopt the requirements of the OWBPA, it would have unequivocally set forth those requirements as part of the state statute.").
Slowinski , at 527-28.
In this case, I believe a similar analysis should be used to determine whether the City of Harahan is an instrumentality of Jefferson Parish and conclude that it is not.
It is a basic principle of statutory construction that the Legislature is presumed to have intended every word and phrase included in a statute to have some meaning and that none was inserted by accident. ABL Mgmt., Inc. v. Board of Sup'rs of Southern Univ. , 00-0798 (La. 11/28/00), 773 So.2d 131, 135. Conversely, it is not presumed that the legislature inserted idle, meaningless or superfluous language in a statute or that it intended any part of the statute to be meaningless, redundant or useless. Id. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. I believe that to be the case here.
Nevertheless, my review of La. R.S. 9:5625's legislative history also supports the basis for this dissent. The 2011 amendments deliberately struck references to "municipalities" in sections C, D, and F. However, the amended version of subsections C and D, specifically applied to municipalities located in "the parish of East Baton Rouge." I find that this example demonstrates legislative intent to specifically limit the cities to which portions of La. R.S. 9:5625 apply.
While the appellee suggests that the current language of La. R.S. 9:5625(C) is an inadvertent result of an oversight in legislative drafting, I disagree. To the extent that this particular law could be re-written to effect a different result in the future, I do not believe that it is within this Court's purview to undertake such a *1049 task. Under our constitution, it is not the function of a court to create legislation, but rather to interpret it. Unwired Telecom Corp. v. Parish of Calcasieu , 03-732 (La. 1/19/05), 903 So.2d 392. Any endeavor to change the law must originate from the legislature. Eads Operating Company, Inc. v. Thompson , 93-2155 (La. App. 1st Cir. 10/7/94), 646 So.2d 948, writ denied , 95-0226 (La. 4/7/95), 652 So.2d 1345.
In the instant case, La. R.S. 9:5625(C) and (D) state that their provisions "shall be applicable only to the parishes of East Baton Rouge and Jefferson or their instrumentalities." In accord with Polk , supra , and Slowinski , supra , I decline to extend the definition of "instrumentality" to include an autonomous municipality within a parish. Further, I do not find that the exclusion of the City of Harahan from La. R.S. 9:5625(C) produces an "absurd consequence" which requires an interpretation of legislative intent.
Moreover, the analysis of the legislative history of La. R.S. 9:5625 in the majority opinion begins with the 1993 amendments, which added the three-year prescriptive period in Subsection (C) as an exception to the five-year prescriptive period in Subsection (A)(3). The first sentence of Subsection (C), as enacted in 1993, stated:
Notwithstanding the provisions of Subsection A, the following provisions shall be applicable only to any parish, municipality, or its instrumentality having a population over three hundred twenty-five thousand.
As I read this language, the phrase "having a population over three hundred twenty-five thousand" modifies everything that comes before it, namely, "any parish, municipality, or its instrumentality." The population of the City of Harahan has never exceeded 325,000. Based on a plain reading of the statutory language, which is clear on its face and is not ambiguous, the three-year prescriptive period in Subsection (C), as enacted in 1993, did not apply to the City of Harahan.
The majority interprets the quoted portion of Subsection (C), as enacted in 1993, to mean that it was intended to apply to all forms of government, including municipalities, "so long as they were situated within a parish whose population exceeded 325,000." This interpretation, which is not consistent with the language used by the legislature, forms the basis for the majority's conclusions that the City of Harahan was included in Subsection (C), as enacted in 1993, because it was located in Jefferson Parish, which had a population of over 325,000, and that the City of Harahan is still subject to the three-year prescriptive period in Subsection (C), rather than the five-year prescriptive period in Subsection (A)(3), because the legislature did not intend to alter the scope of law when it amended Subsection (C) in 2011.
In my view, the City of Harahan did not meet the population threshold for placing it within the scope of Subsection (C), as enacted in 1993, and it was not brought within the scope of Subsection (C), as amended in 2011, because it is not an instrumentality of the parish. Accordingly, the prescriptive period of five years from the date the City had written notice of a use violation, as set forth in La. R.S. 9:5625(A)(3), should apply.
As noted by the majority, the underlying facts of this matter are not in dispute. Wood Companies' facility on the City of Harahan's river batture has been active since the 1960's, operating pursuant to the appropriate permits. The City concedes that it had written notice of the Wood Companies' composting activities no later than February 15, 2012. The City's original reconventional demand was subsequently filed on July 21, 2016. Here, because the City of Harahan is not an instrumentality *1050 of Jefferson Parish, La. R.S. 9:5625(A)(3) instead applies to impose a prescriptive period of five years from the date the City had written notice of the violation, as opposed to the shorter three-year prescriptive period found in La. R.S. 9:5625(C). Thus, the City of Harahan's cause of action had not prescribed at the time its reconventional demand was filed.
Accordingly, I would reverse the trial court's judgment in this matter.

The Batture is comprised of certain land within the municipal boundaries of the City, but outside the protective levees that separate much of the City from the Mississippi River. The Batture is a zoned district of the City in accordance with section XV(A) of City Ordinance 1333 and La. R.S. 33:4271 et seq.

The 1993 amendments to La. R.S.9:5625 made no changes or alterations to subsection A.

While the City of New Orleans and Orleans Parish exceeded the population threshold, subsection (F) of the amended statute specifically provided that the Parish of Orleans and the City of New Orleans were excepted from the provisions of subsections (C) and (D), which applied only to the Parishes of East Baton Rouge and Jefferson.

Even though the population of the City of Harahan itself did not exceed 325,000 in 1993, by virtue of the fact that the City was located within the geographical boundaries of Jefferson Parish, all enforcement actions brought by the City for the violation of a use regulation were subject to the prescriptive periods set forth in La. R.S. 9:5625(C).

See 2011 La. Acts 30, 2011 SB 9, Engrossed.

"The title of an act of the Legislature is of the nature of a label, the purpose of which is to give notice of the legislative intent and purpose to those interested in, or who may be affected by, the terms of the act, and to prevent surprise and fraud upon members of the Legislature." Cobb v. Louisiana Bd. of Institutions , 237 La. 315, 328-329, 111 So.2d 126,131 (1958).

The 2011 amendments to La. R.S. 9:5625 did not address, alter or change any of the provisions set forth in subsection (A)(3).

The City concedes that La. R.S. 9:5625(F) excepts the Parish of Orleans and the City of New Orleans from the five-year prescriptive period for instituting actions challenging violations of use regulations.

The City erroneously relies upon the case of Parish of St. Charles ex rel. Dept. of Planning and Zoning v. Bordelon , 10-2552 (La. 1/28/11), 52 So.3d 875, to support its argument that all enforcement actions for violations of use regulations occurring in parishes throughout the State are subject to the five-year prescriptive period set forth in La. R.S. 9:5625(A)(3), except for those occurring in East Baton Rouge Parish, which are governed by La. R.S. 9:5625(C). In Bordelon , the Louisiana Supreme Court vacated a decision of this Court and held that a suit to enjoin a "use regulation" was prescribed under La. R.S. 9:5625(A)(3) because the enforcement action filed by St. Charles Parish was filed over five years from the date it received written notice of the use violation. Because the violation of the use regulation at issue occurred in St. Charles Parish-and not in East Baton Rouge Parish or Jefferson Parish, which are the only parishes subject to La. R.S 9:5625(C) -La. R.S. 9:5625(A)(3) applied to the suit filed by St. Charles Parish, whereas La. R.S. 9:5625(C) clearly did not. Consequently, the Supreme Court's decision in Bordelon is factually inapposite to the case sub judice and has no bearing upon this Court's interpretation of La. R.S. 9:5625(C).

In those cases where actual notice in writing of a violation is not received, La. R.S. 9:5625(C) provides that "except for use violations, all such actions ... must be brought within five years from the date of the first act constituting the commission of the violation."

La. Const. art. 6, § 44 (1) provides that "Local governmental subdivision" means "any parish or municipality."

La. Const. art. 6, § 44 (2) states, " 'Political subdivision' means a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions."

Examples referenced by the court included: "Louisiana Stadium and Exposition District (LA. CONST.1921, art. XIV, § 47, continued as a statute by LA. CONST. Art. XIV, § 16 (A)(10) )," "Red River Waterway District (LA.REV.STAT.ANN. § 34:2308 )," and "Iatt Lake Water Conservation District LA.REV.STAT.ANN. § 38:3085.4." Slowinski, at 527-28.